IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
) No. 69616-5-I
MASON C. BAILEY, )
) DIVISION ONE
Respondent, )
)
and )
) UNPUBLISHED OPINION
JACKIE E. BAILEY, )
) FILED: June 9, 2014
Appellant. )
_____)

BECKER, J. — Jackie Bailey appeals the trial court's orders dissolving her

marriage to Mason Bailey and dividing their property. Because Jackie mainly

challenges the trial court's determinations regarding credibility and weight of the

evidence and fails to demonstrate any error or abuse of discretion, we affirm.

We also grant Mason's request for attorney fees based on Jackie's frivolous

appeal.

FACTS

Mason and Jackie married in August 2008. Mason had retired from

working as a longshoreman and collected social security benefits in addition to

his pension. During the marriage, Jackie worked as a realtor, for an airline, and

in office jobs. Mason and Jackie separated in February 2010. In October 2010,

the court appointed Brett Bailey, Mason's son, guardian over Mason. Brett filed a petition on behalf of Mason seeking dissolution of Mason's marriage to Jackie.

At trial in September 2012, Jackie asked the trial court to find that the couple had a committed intimate relationship from March 2004 until their marriage and to make a distribution of assets acquired during that relationship. Jackie requested reimbursement for the increase in value of Mason's separate property based on various improvements. Jackie also requested maintenance of $1,500 per month for two years.

The trial court made an oral ruling stating that even if the evidence supported a finding of a committed intimate relationship, the equities did not justify a division of property. The trial judge explained that he did not believe Jackie's testimony and listed several ways he believed that Jackie had taken advantage of Mason's dementia for her own personal financial gain. The court stated in its oral ruling, "I cannot find that Ms. Bailey has in any way been acting with any sort of good faith or in any way within the nature of the relationship that this Court could say would be appropriate to grant her an equitable share of property that may have been accumulated by the parties prior to their marriage."

As to the division of property in the dissolution, the court accepted, with certain exceptions, Jackie's list of items purchased during the marriage for over $76,000 but indicated it could not determine the fair market value of the community property based on the evidence presented at trial. Even using the purchase value, the court found that Jackie had already received well over half the value of the community assets from the transfers of vehicles, other assets,

and cash for which she did not account. Based on these findings and its allocation of all community debts to Mason, the trial court not did award any additional property to Jackie. Based on the lack of evidence demonstrating an increase in the value of Mason's separate property over the course of the marriage, the court denied Jackie's request for reimbursement for community funds or labor. The court also denied Jackie's request for maintenance based on the short duration of the marriage and Jackie's age and ability to work.

The trial court entered written findings of fact and conclusions of law and a final dissolution decree. The court listed the community and separate assets and liabilities allocated to each party. The court assigned all community debts to Mason and entered a judgment in favor of Mason against Jackie for $41,065 for her unauthorized transfer of his separate property, specifically two vehicles. The court also determined that each party would pay his or her own attorney fees.

Jackie appeals.

ANALYSIS

Committed Intimate Relationship

A committed intimate relationship is a "stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." Connell v. Francisco, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). In order to prevent unjust enrichment of one party at the end of a committed intimate relationship, a party may seek an equitable distribution of property acquired by the parties during the relationship. In re Marriage of Pennington, 142 Wn.2d 592, 602, 14 P.3d 764 (2000).

When considering an order resolving claims as to a committed intimate relationship, we review the trial court's findings of fact for substantial evidentiary support, conclusions of law de novo, and the distribution of property for abuse of discretion. Soltero v. Wimer, 159 Wn.2d 428, 433, 150 P.3d 552 (2007). As a reviewing court, we do not substitute our judgment for that of the trial court, weigh the evidence, or judge the credibility of the witnesses. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

Jackie presents a series of related arguments based on her interpretation of the evidence presented at trial, mainly her own testimony, to challenge the trial court's refusal to divide property acquired by the parties during the claimed committed intimate relationship. But Jackie ignores the trial court's specific rejection of her version of events and mischaracterizes its findings of fact and oral ruling as to the resolution of her claim for a division of property based on a committed intimate relationship.

In its oral ruling, the trial court determined that Jackie did not act in good faith when she placed Mason in a care facility without a medical necessity and took advantage of his absence by withdrawing large amounts of cash and selling and transferring vehicles and cash to others without benefit to Mason. The court stated in its written order: "The wife came before the court with unclean hands in her request for an equitable division of property acquired by the parties while they lived together before they married; therefore, the court declined to make such a division." In order to properly challenge on appeal the trial court's findings of fact regarding her lack of good faith, Jackie must demonstrate "why specific

4

findings of the trial court are not supported by the evidence and [must] cite to the record to support that argument." In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998); In re Estate of Palmer, 145 Wn. App. 249, 264-65, 187 P.3d 758 (2008).

Our review of the record establishes that the trial court's findings are supported by medical and financial records as well as Brett's testimony. Jackie's citations to her own contrary testimony do not undermine the findings. The trial court specifically rejected much of the testimony and the self-serving affidavits Jackie presented to support her description and explanation of her actions as to the date of acquisition of certain property, Mason's care, her use of cash, and the transfers of the vehicles. We do not review the trial judge's explicit statement that he did not believe her and did not agree with her interpretation of the evidence. Greene, 97 Wn. App. at 714.

We also reject Jackie's claim that the trial court improperly considered her lack of good faith during the marriage when ruling on her request for an equitable division of property acquired during the committed intimate relationship. Without citation to relevant authority or cogent analysis, Jackie claims that the finding of bad faith here is equivalent to the type of marital misconduct that RCW 26.090.080 directs courts to disregard when dividing property in a dissolution. But "the 'marital misconduct' which a court may not consider under RCW 26.09.080 refers to immoral or physically abusive conduct within the marital relationship and does not encompass gross financial improvidence, the squandering of marital assets, or . . . the deliberate and unnecessary incurring of

tax liabilities." In re Marriage of Steadman, 63 Wn. App. 523, 528, 821 P.2d 59 (1991) (footnote omitted). Washington courts have repeatedly "held that negatively productive conduct that causes the dissipation of *marital assets* can be considered" in shaping a fair and equitable division of the parties' assets and liabilities. In re Marriage of Muhammad, 153 Wn.2d 795, 804, 108 P.3d 779 (2005); Steadman, 63 Wn. App. at 528. Jackie fails to establish error in the court's consideration of her lack of good faith in her use of marital assets and Mason's separate property when ruling on her request for equity.

In simple terms, the trial court determined here that Jackie, acting without good faith and against Mason's interests during the marriage, misappropriated substantial amounts of marital assets as well as Mason's separate property for her own personal financial gain. Based on the properly supported findings, we cannot say that the trial court abused its discretion by determining that a division of property acquired by the parties prior to the marriage would not be just and equitable under the circumstances here.

Dissolution Property Division

In a dissolution action, all property, community and separate, is before the court for distribution. In re Marriage of Stachofsky, 90 Wn. App. 135, 142, 951 P.2d 346, review denied, 136 Wn.2d 1010 (1998).

We review an order distributing property for an abuse of discretion and will only reverse a trial court's decision if there is a manifest abuse of discretion. In re Marriage of Kraft, 119 Wn.2d 438, 450, 832 P.2d 871 (1992). The relevant factors in determining a just and equitable distribution of property are provided by

statute. They include (1) the nature and extent of community property, (2) the nature and extent of separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080. The trial court is in the best position to determine what is "'fair, just and equitable'" under the circumstances. In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999), quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977).

Jackie argues the trial court erred in the division of marital property by (1) rejecting her claim that two vehicles were her separate property because Mason transferred them into her name, (2) giving Mason a judgment against her for those two vehicles, (3) refusing to reimburse the community for improvements to Mason's separate property, and (4) failing to consider the economic condition of the parties after their separation and her lack of resources to pay the judgment.

Jackie does not dispute that Mason bought the two vehicles at issue with his separate funds before the marriage. And the trial court rejected Jackie's testimony about the alleged transfers and her interpretation of the documents she presented. The trial court found Jackie sold or transferred those vehicles during the marriage without Mason's consent and without benefit to him. The trial judge explicitly stated that he believed Jackie was "in cahoots" with a friend, who sold one of the vehicles for $23,000 shortly after buying it from Jackie for only $500. The trial court did not err by finding Brett's testimony regarding Mason's acquisition and use of the vehicles, Mason's medical condition, and the

appearance of Mason's signature, as well as other evidence, more credible and convincing than Jackie's testimony.

The trial court imposed the $41,065 judgment against Jackie based on (1) its findings that two specific vehicles, a Wrangler and a Ram, were Mason's separate property; (2) clear evidence produced at trial establishing the trade-in value of the Wrangler and the resale price of the Ram; and (3) the undisputed fact that Jackie did not give any of the proceeds to Mason after she made the transactions. As to the division of the remaining assets and liabilities, the court awarded each party his or her remaining separate property as Jackie listed in her property description. The trial court noted that despite the short duration of the marriage, the parties incurred a great deal of debt, all of which it allocated to Mason, and Jackie accumulated a significant amount of separate property. In light of Mason's significant debt and Jackie's use of assets and cash during the marriage, the trial court determined that it was appropriate to award Mason the remaining community property. Because these determinations are supported by, and within the range of, the evidence in the record, Jackie fails to establish a manifest abuse of discretion.

We also reject Jackie's challenge to the trial court's denial of her request for reimbursement to the community for improvements made to Mason's separate property. Again, Jackie relies primarily on her testimony and evidence describing certain improvements, the purchase price of various materials, and estimates of costs of services. But the court indicated that it would not order such reimbursement based on the lack of proof as to specific dates of any

particular project and the lack of any evidence, beyond Jackie's estimates and speculation, as to the value of the property before and after any improvements made during the marriage. Given the lack of positive and direct evidence that Mason's property increased in value over the course of the marriage as a result of community funds or labor, Jackie fails to demonstrate error. In re Marriage of Elam, 97 Wn.2d 811, 816, 650 P.2d 213 (1982) (court may impose lien on separate property where "direct and positive evidence that the increase is attributable to community funds or labors" rebuts presumption that increase in value of separate property is also separate).

Finally, the record reveals that the court specifically considered the parties' economic condition after the division. While Mason's age, physical and emotional condition, and substantial debt incurred during the marriage mean "what he has got now is what he is going to get," Jackie has no debt resulting from substantial community expenditures during the marriage and "can work presumably for at least 15 more years" based on her age and physical condition. The fact that the trial court expressed doubt on the record as to whether Jackie would actually pay the $41,065 judgment does not demonstrate a failure to consider her economic condition. Jackie fails to demonstrate error in the property division.

## Motion to Continue

Jackie claims the trial court erred by excluding the testimony of her expert witness, Kent Thomas, a real estate appraiser. This is a mischaracterization of the record. After all available witnesses had testified, Jackie explained that she

had been unable to contact Thomas and requested a continuance to locate him and bring him to court. The trial court denied the motion to continue the trial.

We review a denial of a motion to continue for manifest abuse of discretion. In re Dependency of V.R.R., 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). In considering a continuance, the trial court considers various factors, "including diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." V.R.R., 134 Wn. App. at 581.

After a lengthy discussion on the record, the trial court stated that even if Thomas had appeared to testify, his testimony would not be helpful to the court because Thomas had not visited the property and would be relying only on Jackie's statements and the report of Mason's appraiser. The court also considered that the case had been pending for over a year and a half, and Mason's condition, as well as the guardianship and vulnerable adult protection order proceedings, justified a priority resolution and decision of the case.

Jackie complains about changes in the trial schedule and claims that Thomas's expert testimony was essential to her claim for reimbursement. But she fails to acknowledge or address the trial court's determination that Thomas's opinion would have been unhelpful. Jackie has not identified a manifest abuse of discretion.

Attorney Fees

Jackie contends the trial court erred by denying her request for attorney fees at trial under RCW 26.09.140. That section allows the trial court to order a

party to pay reasonable attorney fees of the other party "after considering the financial resources of both parties." A trial court's decision not to award fees under RCW 26.09.140 will be reversed only if "untenable or manifestly unreasonable." In re Custody of Salerno, 66 Wn. App. 923, 926, 833 P.2d 470 (1992).

The trial court explicitly considered the "extraordinary large attorneys fees" incurred by both parties, Mason's circumstances and debt, and Jackie's income, and found that although Jackie may have a need, Mason would be strained to pay his own fees. The trial court's decision to require each party to pay his or her fees was reasonable. Jackie fails to establish abuse of discretion.

Jackie requests attorney fees on appeal under RCW 26.09.140, citing her financial need and Mason's ability to pay. Mason requests an award of attorney fees under RAP 18.9(a) as a sanction for Jackie's frivolous appeal. "An appeal is frivolous if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists." Chapman v. Perera, 41 Wn. App. 444, 455-56, 704 P.2d 1224, review denied, 104 Wn.2d 1020 (1985). Because Jackie's arguments turn on the trial court's clear and explicit determinations of credibility and weight of the evidence or lack of evidence, matters which are not subject to review, we are convinced that the appeal presents no debatable issues upon which reasonable minds might differ and is devoid of merit. We award reasonable appellate attorney fees to Mason under RAP 18.9 upon his compliance with RAP 18.1.

Affirmed.

Becker, J.

Leach, J.

Spearman, C.J.