IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| PARKER SAVANNAH BRINKERHOFF, | No. 85928-5-I |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| HEATH RAYNO, | |
| Respondent. | |

BOWMAN, J. — Parker Brinkerhoff, representing herself, appeals the dismissal of her petition for a domestic violence protection order (DVPO) against her father, Heath Rayno. Her sole assignment of error on appeal is that the superior court commissioner erred by ignoring problems with the courtroom audio player during the hearing on her petition. This claim lacks merit. While Brinkerhoff does not assign error to the findings of fact, she also argues she met her burden of proof to issue the DVPO. We affirm.

## FACTS

Rayno and Candus Brinkerhoff are the parents of Parker,[1] born in 2007. Parker attends the University of Washington and lives with her mother and stepfather under a 2018 parenting plan that provides Rayno visitation every other weekend. Parker has a difficult relationship with her father, alleging he is verbally, emotionally, and physically abusive.

---

[1] For the remainder of the opinion, we refer to Parker Brinkerhoff and Candus Brinkerhoff by their first names for clarity and mean no disrespect by doing so.

In May 2022, Parker petitioned for a DVPO against Rayno, which the court dismissed on procedural grounds. In December 2022, Parker petitioned for another DVPO against Rayno, which the court again denied after finding that a preponderance of the evidence did not support issuing any type of protection order. The court found that "while Respondent's conduct was inappropriate and he has a pattern of such conduct, it does not rise to the level of domestic violence as defined." The court declined to consider audio recordings submitted by Parker as evidence of Rayno's domestic violence because she obtained them without the parties' consent, and no statutory exception to the consent requirement applied.

In May 2023, Rayno moved for a contempt order, alleging that Candus intentionally failed to make Parker available for residential visits since December 2022. The court found Candus in contempt and ordered 35 overnights of make-up parenting time for Rayno, consisting of 7 consecutive days per month to begin on June 23, 2023. Visitation started on June 23 as ordered.

Six days later on June 29, Parker petitioned for another DVPO against Rayno, alleging emotional and physical abuse. She said that she was "just the witness to him abusing everyone" until 2021, when he "started pushing me and screaming harder and meaner at me than ever before," to the point that she had to "wipe his spit off my face." Parker stated that the most recent incident took place during visitation on June 25, 2023. She described being in her bedroom and overhearing a heated altercation between Rayno and his girlfriend, which made Parker fearful. Parker also described several previous incidents where she

witnessed Rayno pushing his girlfriends or screaming at them and their children. In support of her petition, Parker asked the court to consider audio recordings she made of the June 25, 2023 incident and other incidents, "since I recorded him out of fear he would hurt me." The court granted Parker a temporary DVPO, scheduled a hearing for July 13, 2023, and suspended the parenting plan until further order of the court.[2]

Rayno denied Parker's allegations and moved for an order restricting her from using abusive litigation against him. Rayno claimed that Candus has manipulated Parker to create conflict and insisted that he never "abused, hit, pushed, or even spanked" Parker at any time during her life. He acknowledged that he and his girlfriend had an "inexcusable" verbal argument on June 25, 2023 but asserted that the incident did not amount to abuse of Parker, pointing out that she remained in her bedroom and was not involved in the argument. He also asserted that Parker did not appear to be concerned or fearful at any point during the weekend.

Rayno supported his petition with declarations from his girlfriend and her friend, who was also present in the home during the argument. Both declarations corroborated Rayno's version of events on June 25, 2023. Rayno also informed the court that Parker had "just filed" a motion for emancipation, which he characterized as an attempt by Candus to use Parker as a "pawn . . . to circumvent Family Court."

---

[2] The court extended the temporary DVPO several times after granting Parker's motions to continue the hearing on her DVPO petition.

On September 18, 2023, Parker and Rayno presented their arguments at a videoconference hearing before a superior court commissioner. Parker asserted that her audio recordings supported her abuse allegations. Rayno pointed out that the court in Parker's December 2022 DVPO petition refused to consider the audio recordings because she obtained them without consent and no exception applied, and asked the commissioner to exclude them on the same basis. Rayno also pointed out that Parker has litigated her allegations in other proceedings with no findings of abuse.

At the end of the hearing, the commissioner found that although the parties had a "tenuous relationship," Parker did not meet her burden to show by a preponderance of the evidence that Rayno's actions amounted to domestic violence. The court denied Parker's petition for a DVPO.

Parker appeals.

ANALYSIS

Preliminarily, we observe that we hold pro se litigants to the same standard as attorneys, and they must comply with all procedural rules on appeal. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). "The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." *Clark County v. W. Wash. Growth Mgmt. Hr'gs Rev. Bd.*, 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (citing RAP 5.3(a), 10.3(a), (g), 12.1). We will review only a claimed error that is "included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). Further, "[u]nchallenged findings of fact are

verities on appeal and unchallenged conclusions of law become the law of the case." *In re Marriage of Laidlaw*, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018).

1. Audio Recordings

Parker argues the court erred by ignoring problems with the courtroom audio player. The record does not support her argument.

Washington's privacy act, chapter 9.73 RCW, prohibits recording any "[p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation." RCW 9.73.030(1)(b). RCW 9.73.030(2) lists exceptions to the consent requirement, including unlawful threats of bodily harm. RCW 9.73.030(2)(b). Information obtained in violation of the privacy act is inadmissible for any purpose in any civil or criminal case. *State v. Fields*, 31 Wn. App. 2d 687, 709, 553 P.3d 71 (2024) (citing RCW 9.73.050). Whether a private communication is protected by the privacy act is a question of law we review de novo. *State v. Gearhard*, 13 Wn. App. 2d 554, 561, 465 P.3d 336 (2020).

Parker claims that her audio recordings were legal because Rayno assaulted her and inflicted fear of physical harm. But Parker does not assign error to any of the trial court's findings of fact or conclusions of law. Nor does she claim that the superior court commissioner misapplied the law in declining to admit her recordings. Instead, her sole assignment of error on appeal is:

> The King County Superior Court erred in denying the Appellant's petition for a Protective Order by order entered on Sept[.] 18, 2023. The King County Superior Court erred by not being able to work their courtroom audio player and ignoring the

5

problem with their courtroom audio player during the hearing on Sept[.] 18, 2023.

Specifically, she asserts that the commissioner "asked me which audio recordings I wanted him to play in the courtroom" and that he did not listen to them because he "had a problem with the system in the courthouse." She also asserts that the commissioner "never [said] that my recordings were illegal."

Parker's assertions are not only unsupported by the record, they are contradicted by it. The verbatim report of proceedings for the September 18, 2023 hearing clearly shows that Rayno objected to admitting the recordings, arguing that the December 2022 court found they violated the privacy act. The commissioner then listened to the parties' arguments on the admissibility of the recordings without attempting to play them in open court. At the end of the hearing, the commissioner expressly "indicate[d], for the record, that I do not find exceptions to the rule regarding consensual recording in Washington [S]tate applied in this matter so I did not consider the recordings in this matter."

While the commissioner did note sometime during the hearing that "[t]here was a little bit of an issue with my audio," he was referring to his ability to hear the remote testimony of the parties, not his inability to play Parker's recordings. In any event, he stated on the record that the audio glitch was "not a significant impediment to this hearing."

Parker fails to establish that audio problems impacted the outcome of the hearing or that the court erred in excluding her recordings as violations of the privacy act.

2. Domestic Violence

Parker further argues that she met her burden of proving by a preponderance of the evidence that she was a victim of domestic violence and that the court should have issued the DVPO. Because the court did not abuse its discretion, we disagree.

We review the decision to grant or deny a DVPO for an abuse of discretion. *Rodriguez v. Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

When, as here, the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the court's findings of fact and, if so, whether those findings support the court's conclusions of law. *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). "Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). "[E]ven if there is conflicting evidence," we will not disturb a superior court's findings of fact if substantial evidence supports the finding. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). This is because we must "defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Knight v. Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Chapter 7.105 RCW governs the issuance of civil protection orders. Under RCW 7.105.225(1), "[t]he court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria." For a DVPO, the statute requires that "the petitioner has been subjected to domestic violence by the respondent." RCW 7.105.225(1)(a). As relevant here, the definition of "domestic violence" includes "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault . . . of one family or household member by another family or household member." RCW 7.105.010(9)(b).

Here, substantial evidence supports the superior court commissioner's decision. In its oral comments and written order, the court stated that it had considered the parties' testimony and "reviewed [the] extensive court file," including the parties' declarations, an emancipation assessment written by a Family Court Services (FCS) social worker, the contempt order, and the court records in previous matters that had been dismissed. After considering the testimony of both parties, the court expressly found that Rayno was credible and that he rebutted Parker's allegations. The court also noted that "some of [Parker's] allegations have been previously litigated," that Candus had been found in contempt, and that the FCS assessment recommended the court deny Parker's emancipation petition.

Still, Parker disputes Rayno's version of events. But she does not assign error to the superior court commissioner's finding that Rayno's testimony was credible and that he rebutted Parker's allegations, so that finding is a verity on

8

appeal.  Even more to the point, we cannot reevaluate the credibility of witnesses.  *Dalton v. State*, 130 Wn. App. 653, 656, 124 P.3d 305 (2005).

We affirm the court's order denying Parker's petition for a DVPO against Rayno.

Brennan, J.

WE CONCUR:

Feldman, J.

Dwyer, J.