IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JITENDRA KUMAR KULSHRESHTHA,

Respondent,

v.

AASHIMA KULSHRESHTHA,

Appellant.

No. 83784-2-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — Aashima Kulshreshtha appeals a domestic violence protection order (DVPO) protecting her former husband, Jitendra Kulshreshtha,[1] and the parties's children, O.K. and T.K. Aashima argues that the evidence was insufficient to support a finding that she committed domestic violence and that the trial court erred by relying on a Family Court Services (FCS) report. We affirm.

## I.   FACTS[2]

In July 2021, Jitendra petitioned for a DVPO protecting himself, O.K., and

---

[1] The parties's surname also appears throughout the record as "Kulshrestha." We spell it as Jitendra Kulshreshtha spelled it in his pro se DVPO petition below. Additionally, because the parties share a surname, we refer to them hereafter by their first names for clarity.

[2] One week before this matter was set for consideration, Aashima filed an "Emergency Motion" that consists of a supplement to her appellant's brief. RAP 10.1(b) contemplates that the following briefs may be filed on appeal: "(1) a brief of appellant or petitioner, (2) a brief of respondent, and (3) a reply brief of appellant or petitioner." The RAPs do not contemplate the supplemental brief that Aashima now attempts to file, and Aashima does not persuade us that the ends of justice would be served by accepting such a brief at the eleventh hour. Aashima's "Emergency Motion" is hereby denied, and we do not consider the supplemental arguments therein. See RAP 10.1(h) (providing that appellate court may authorize

T.K. from Aashima. Jitendra declared under penalty of perjury that (1) in August 2020, despite an existing restraining order, Aashima "barged" into Jitendra's home without his permission, resisted when he asked her to leave, "pulled [him] out, grabbed [his] shirt, and scratched in anger"; (2) on April 21, 2021, Aashima came to Jitendra's home and started ringing the doorbell "despite clear prior requests to not come to [his] property" and an existing restraining order; (3) on April 23, 2021, Aashima was waiting in a cab a couple of houses away from Jitendra's house, jumped out and started following Jitendra and T.K. as soon as she saw them, and tried to "indulge in conversation and arguments"; and (4) Aashima had been harassing Jitendra regularly via email and text, including by calling "non-stop during late nights, mornings, afternoon and evenings," sometimes "30-40 times in an hour," and that she did not stop even after being "repeatedly reminded of her harassing behavior."

In September 2021, the trial court held a hearing on Jitendra's petition and took testimony from both parties. The court did not make a ruling on the petition but instead continued the hearing and ordered an FCS domestic violence evaluation to obtain "more information."

In December 2021, FCS issued a 17-page report. The report is not in the record, but the record shows the evaluator recommended that a protection order be entered and that Aashima participate in a psychological evaluation.

In February 2022, the trial court held a follow-up hearing on Jitendra's

---

the filing of briefs other than those listed in the rule); cf. RAP 1.2(c) ("The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice.").

petition. After hearing argument from the parties, the court acknowledged that there were disputed facts as to the parties's "history," indicated that it had reviewed the FCS report, and stated that "having reviewed that I think there's a sufficient enough basis to grant the protection order." The court expressly found that Aashima "committed domestic violence as defined in RCW 26.50.010" and entered a one-year DVPO protecting Jitendra, O.K., and T.K. from Aashima. Aashima appeals.[3]

## II.     DISCUSSION

### A. Standard of Review

We review a trial court's decision to grant a DVPO for abuse of discretion. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016). The trial court abuses its discretion when its decision is manifestly unreasonable, or when it exercises its discretion on untenable grounds or for untenable reasons. Id. Where, as here, the trial court has weighed the evidence, we defer to the trial court's determinations regarding the persuasiveness of the evidence, witness credibility, and conflicting testimony. Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). Our role is to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the

---

[3] In her notice of appeal, Aashima designated both the DVPO and an order denying reconsideration of the DVPO. However, Aashima does not assign error to or present any argument addressing the latter order. Therefore, we do not consider whether the trial court erred by denying reconsideration of the DVPO. See RAP 10.3(a)(4), (6) (requiring appellant's brief to include assignments of error and "argument in support of the issues presented for review"); see also Riley v. Iron Gate Self Storage, 198 Wn. App. 692, 713, 395 P.3d 1059 (2017) (declining to consider challenge to denial of motion for reconsideration where appellant did not present any argument or supporting authority in his appellate brief).

conclusions of law.  Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

"[S]ubstantial evidence review 'is deferential and requires the court to view the evidence and reasonable inferences in the light most favorable to the party who prevailed below.' " Garza v. Perry, 25 Wn. App. 3d 433, 453, 523 P.3d 823 (2023) (internal quotation marks omitted) (quoting State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019).  Evidence is substantial if it is sufficient to persuade a rational and fair-minded person that a premise is true.  Nguyen v. City of Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

B.  Domestic Violence Finding

Aashima argues that reversal is required because substantial evidence does not support the trial court's finding that she committed domestic violence.  We disagree, whether the domestic violence alleged is physical injury or stalking.

The Domestic Violence Protection Act (DVPA), chapter 26.50 RCW, authorizes the trial court to enter a DVPO based on a determination that domestic violence occurred.[4]  See RCW 26.50.030 (DVPO exists for protection "in cases of domestic violence").  "Domestic violence" includes "[p]hysical harm, bodily injury, [or] assault" of one former spouse by another former spouse.  RCW

---

[4] Aashima cites to chapter 7.105 RCW throughout her appellant's brief. However, when the trial court entered the DVPO, the DVPA governed civil domestic violence protection order proceedings. The legislature repealed the DVPA effective July 1, 2022 as part of legislation that reorganized various civil protection order statutes into chapter 7.105 RCW. See LAWS OF 2021, ch. 215, § 170(94)-(126).  Because this legislation was not yet in effect at the time of the proceedings below, we refer herein to the relevant, but since repealed, DVPA statutes as if still in effect.

26.50.010(3)(a), (6).

Here, Jitendra declared and later testified that in 2020, Aashima forced her way into his home and scratched him while he was trying to get her to leave. In a police report from the incident, the responding officer wrote that he saw "what appeared to be a fresh small red mark on the back of [Jitendra's] right hand and two small scratches on his right forearm." This constitutes substantial evidence that Aashima inflicted physical harm, bodily injury, or assault on Jitendra and, thus, that Aashima committed domestic violence.

Aashima counters that the police report also stated that law enforcement did not locate her in the area and that Jitendra would not cooperate with officers or let them look at his arm. But the fact that officers could not further investigate the allegations in Jitendra's report does not mean the incident could not have occurred as Jitendra described. Cf. PacifiCorp v. Wash. Utils. & Transp. Comm'n, 194 Wn. App. 571, 598, 376 P.3d 389 (2016) (evidence is not made less substantial by the mere presence of contradictory evidence in the record).

Similarly, according to the police report, Jitendra was "very upset that Aashima might go to jail," and he later explained that he did not want to press charges at the time because he "was mindful of . . . how that can impact . . . things." Aashima asserts that Jitendra's desire that Aashima to not be arrested is inconsistent with his claim that she assaulted him. Based on this same evidence, Aashima contends that "the lower court could not conclude that [Aashima] physically harmed [Jitendra]." Under the applicable deferential standard of review, we "will not substitute [our] judgment for that of the trial court even

though [we] might have resolved a factual dispute differently." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)

"Domestic violence" also includes "stalking as defined in RCW 9A.46.110" of one former spouse by another former spouse. RCW 26.50.010(3)(c), (6). A person commits stalking if, "without lawful authority," he or she "intentionally and repeatedly [i.e., on two or more separate occasions] harasses or repeatedly follows [i.e., deliberately maintain[s] visual or physical proximity to] another person"; and "[t]he person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person." RCW 9A.46.110(1); see also former RCW 9A.46.110(6)(b) (2013) (defining "follows"); former RCW 9A.46.110(6)(e) (defining "repeatedly"). "The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances." RCW 9A.46.110(1)(b). Additionally, the stalker must "[i]ntend[ ] to frighten, intimidate, or harass the person" or "[k]now[ ] or reasonably should know that the person is afraid, intimidated, or harassed." RCW 9A.46.110(1)(c). "Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person," and "contact" includes "the sending of an electronic communication to the person." RCW 9A.46.110(4).

"Harasses" in turn means "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." Former RCW

9A.46.110(6)(e) (2013); former RCW 10.14.020(2) (2011). "The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner." Former RCW 10.14.020(2) (2011). A "course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose," and includes "contact" and "the sending of an electronic communication." Former RCW 10.14.020(1) (2011).

Here, the record contains evidence, in Jitendra's petition and testimony, that Aashima repeatedly texted and called him—sometimes up to 30-40 times an hour—despite being told not to. And, Jitendra attested that Aashima showed up at or near his house on at least two occasions in April 2021 despite a restraining order being in place. Given that the record also contains evidence that Aashima entered Jitendra's home uninvited a year earlier and assaulted Jitendra, and Jitendra's declaration that Aashima's actions and behavior caused him "stress, anxiety, and harm [to] well-being, physical, and mental peace," it was not unreasonable for the trial court to infer that Jitendra experienced a level of fear and substantial emotional distress that a reasonable person would under the circumstances.

Aashima argues that she simply wanted to "check on her kids" and thus had a lawful and legitimate purpose for her actions because she was concerned about her children's welfare. That argument asks this court to reweigh the evidence and the credibility of the parties, which we will not do. See Living Essentials, 8 Wn. App. 2d at 15 ("Reviewing courts will not reweigh the evidence or the credibility of

7

witnesses on appeal.").

In short, when viewed in the light most favorable to Jitendra, the record supports a finding that Aashima committed domestic violence under both the physical harm and stalking prongs of RCW 26.50.010.[5] Consequently, Aashima's sufficiency challenge fails.

C. FCS Report

Aashima also argues that the trial court abused its discretion by relying on the FCS report. She asserts that the report was "unreliable and inconsistent" because it "omit[ted] several material facts favorable to [Aashima]," "contained misleading facts that painted [Aashima] in a negative light," "inappropriately relied on [Jitendra]'s presentation of the facts to support its conclusions," and presented the facts in a "one-sided" manner.

But the FCS report is not in the record on appeal. Therefore, the record before us does not support Aashima's characterizations of the report—and, indeed, Aashima does not support a number of her assertions about the report with citations to the record. Cf. Sunderland Fam. Treatment Servs. v. City of Pasco, 107 Wn. App. 109, 116, 26 P.3d 955 (2001) (appellant "has the burden of providing a record sufficient to review the issues raised"). Furthermore, while the record reflects that the trial court considered the FCS report in entering the DVPO,

---

[5] Aashima asserts that "a court must make specific findings to support the issuance of a [DVPO]." As much as Aashima contends that the trial court's finding that she "committed domestic violence" was not sufficiently specific, she provides no authority to support that assertion, and we reject it. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

it does not establish, as Aashima claims, that the court "simply deferred" to the report to the exclusion of considering the totality of the evidence before it. And because that evidence, as discussed, supports the trial court's domestic violence finding, Aashima does not establish that the trial court abused its discretion in entering the DVPO.

III. CONCLUSION

We affirm.

_Díaz, J._

WE CONCUR:

_Smith, C.J._  _Mann, J._